IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

JOE CARROLL ZIGLAR,            )
                               )
        Petitioner,            )
                               )
    v.                         )    CASE NO. 2:16-CV-463-WKW
                               )         [WO–PUBLISH]
UNITED STATES OF AMERICA,       )
                               )
        Respondent.            )

## MEMORANDUM OPINION AND ORDER

## I.  INTRODUCTION

After obtaining authorization under 28 U.S.C. §§ 2252(h)(2) and 2244(b)(3)

from the Eleventh Circuit Court of Appeals to file a second or successive 28 U.S.C.

§ 2255 motion, Petitioner Joe Carroll Ziglar filed the instant Motion to Correct

Sentence Under § 2255.  Ziglar moves the court to correct his sentence under

*Johnson v. United States*, 135 S. Ct. 2551 (2015), which voided for vagueness the

residual clause of the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e),

and which applies retroactively to cases on collateral review, *see Welch v. United

States*, 136 S. Ct. 1257 (2016).  Ziglar contends that, based upon *Johnson* and *Welch*,

his Alabama convictions for third-degree burglary no longer qualify as predicate

violent felonies under the ACCA's residual clause.  He argues further that these

convictions do not count as violent felonies under the ACCA's other definitions that

are unaffected by *Johnson*, an argument that necessarily relies on application of the holding in *Descamps v. United States*, 133 S. Ct. 2276 (2013).  Accordingly, Ziglar challenges the constitutionality of his enhanced sentence under the ACCA, and he seeks to be resentenced without the enhancement.  Ziglar and the government have submitted a joint proposal in which they argue together that Ziglar is entitled to sentencing relief and that he likely is eligible for immediate release.  (Doc. # 8.) Ziglar also has filed an affidavit waiving his right to be present for a resentencing hearing because he "want[s] to be re-sentenced as quickly as possible."[1]  (Doc. # 6.)

While the easier course would have been to grant Ziglar's motion based upon the government's concession, the court has an independent obligation to ensure that Ziglar has satisfied the requirements of § 2255(h)(2) for bringing a second or successive § 2255 motion.  Whether Ziglar meets the requirements of § 2255(h)(2) is not readily divined from Eleventh Circuit case law.  After *Welch*, the Eleventh Circuit has been crushed with a tsunami of applications from inmates seeking authorization to file second or successive § 2255 motions.  *See In re Clayton*, No. 16-14556-J, ___ F.3d ___, 2016 WL 3878156, at *16 (11th Cir. July 18, 2016) (Jill Pryor, J., concurring in result) ("We have received over 1,800 requests for authorization to file a second or successive § 2255 motion since *Welch* was decided.").  These applications have produced a number of published panel decisions

---

[1] To expedite a ruling, additional briefing was not ordered.

in which the Eleventh Circuit has taken what seem to be diametrically opposed views about *Descamps*'s applicability to successive § 2255 motions in the aftermath of *Johnson* and *Welch*.

After much deliberation, the court finds that Ziglar has failed to demonstrate that at the time of sentencing his Alabama convictions for third-degree burglary qualified as violent felonies only under the ACCA's residual clause and not under the enumerated-crimes clause and that, therefore, Ziglar's convictions do not fall within the scope of *Johnson*.  Furthermore, Ziglar cannot use *Johnson* to litigate a *Descamps* issue because *Descamps* is not a new rule of constitutional law within the meaning of § 2255(h)(2), and the government cannot waive the non-retroactivity of *Descamps* because § 2255(h)(2) is jurisdictional.   Because Ziglar has not demonstrated that his ACCA-enhanced sentence falls within the scope of *Johnson*, Ziglar has not satisfied § 2255(h)(2)'s criteria, and his § 2255 motion is due to be denied.

## II.  BACKGROUND

On March 22, 2005, at 1:30 a.m., a Montgomery, Alabama police officer stopped Ziglar for driving with a burned-out headlight.  Turns out, Ziglar was intoxicated, and a search incident to his arrest revealed a .38 caliber handgun under the driver's seat.  On September 8, 2005, Ziglar was indicted on a charge of being a

felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).  He entered a guilty plea to this charge, without a plea agreement, on January 27, 2006.

The presentence report ("PSR") submitted to the district court revealed that Ziglar had seven prior Alabama felony convictions.  A conviction under § 922(g)(1) normally carries a sentence of not more than ten-years' imprisonment.  18 U.S.C. § 924(a)(2).  However, under the ACCA, an individual who violates § 922(g) and has three previous convictions for a violent felony, a serious drug offense, or both, is subject to a fifteen-year minimum sentence.  § 924(e)(1).  The ACCA defines a violent felony as any crime punishable by imprisonment for a term exceeding one year that: (1) "has as an element the use, attempted use, or threatened use of physical force against the person of another"; (2) "is burglary, arson, or extortion, involves use of explosives"; or (3) "otherwise involves conduct that presents a serious potential risk of physical injury to another."  § 924(e)(2)(B).  These definitions of "violent felony" fall into three respective categories: (1) the elements clause; (2) the enumerated-crimes clause; and (3) and the residual clause.  *See In re Sams*, No. 16-14515-J, ___ F.3d ___, 2016 WL 3997213, at *2 (11th Cir. July 26, 2016); § 924(e)(2).

According to the PSR, Ziglar's prior felony convictions included "four prior 'violent felonies'" within the meaning of § 924(e)(2).  (PSR, at ¶ 17.)  The PSR did not indicate expressly which prior felony convictions served as the ACCA predicate

offenses or which clause of the ACCA's definition of "violent felony" encompassed the predicate offenses.  But, by process of elimination and consistent with the parties' present recitals, the felony convictions upon which the PSR relied to enhance Ziglar's sentence under the ACCA are his four Alabama convictions for third-degree burglary.  *See* Ala. Code § 13A-7-7(a); *see also In re Ziglar*, No. 16-10305 (11th Cir. May 3, 2016) (Order granting Ziglar's application for leave to file a second § 2255 motion) ("Ziglar's ACCA sentence appears to have been based on his four prior convictions for third-degree burglary under Alabama law.").  The PSR reported, with respect to the third-degree burglary convictions, that Ziglar burglarized three area churches and a pastor's home over a two-week period in May 2000.  At sentencing and under the modified categorical approach, discussed later in this opinion, these undisputed facts in the PSR placed Ziglar's third-degree burglary crimes within the definition of generic burglary, as required to qualify as violent felonies under the ACCA's enumerated-crimes clause.

Ziglar did not file written objections to the PSR or otherwise contest any of the factual statements in the PSR.  At the sentencing hearing held on December 18, 2006, the district court adopted the PSR in its entirety without specifically discussing the ACCA-eligible predicate convictions.  (*See* Doc. # 503, at 2 ("[T]here being no objections, the Court adopts the factual statements contained in the presentence report . . . .").)  Based on the PSR's determination that Ziglar was an armed career

criminal pursuant to § 924(e)(2), the district court sentenced Ziglar to the mandatory minimum sentence of 180 months.

Ziglar did not file a direct appeal; however, on July 6, 2007, he filed a § 2255 motion, alleging ineffective assistance of counsel. The motion did not raise any claims challenging the use of the third-degree burglary convictions to enhance his sentence under § 924(e). That motion was denied on October 22, 2009. *See Ziglar v. United States*, No. 2:07-cv-632–MEF, 2009 WL 3429808 (M.D. Ala. Oct. 22, 2009). Ziglar filed a notice of appeal, but the Eleventh Circuit denied his application for a certificate of appealability, *see* 28 U.S.C. § 2253, on April 19, 2010, and, with the denial, the § 2255 proceedings concluded (Doc. # 7, at 3).

In 2015, the United States Supreme Court held that the ACCA's residual clause—defining a violent felony as one that "otherwise involves conduct that presents a serious potential risk of physical injury to another"—is unconstitutionally vague. *See Johnson v. United States*, 135 S. Ct. 2551, 2563 (2015) ("[I]mposing an increased sentence under the residual clause of the Armed Career Criminal Act violates the Constitution's guarantee of due process[.]"). Then, in 2016, the Court held that *Johnson* announced a new substantive rule of constitutional law that applies retroactively to cases on collateral review. *Welch v. United States*, 136 S. Ct. 1257 (2016).

Under *Johnson* and *Welch*, Ziglar's third-degree burglary convictions cannot be used as predicate ACCA offenses under § 924(e)(2)(B)'s residual clause. *Johnson* clarified, though, that the ACCA's other two clauses, namely, the elements and the enumerated-crimes clauses, remain viable. *See Johnson*, 135 S. Ct. at 2563 ("Today's decision does not call into question application of the [ACCA] to the four enumerated offenses, or the remainder of the [ACCA's] definition of a violent felony."). Hence, a sentence not under the ACCA's residual clause, but under one of the other two definitions of violent felony under the ACCA, does not fall within the scope of the substantive rule of *Johnson*.

On January 25, 2016, in the Eleventh Circuit Court of Appeals, Ziglar filed a *pro se* application for leave to file a second or successive § 2255 petition on grounds that his enhanced sentence under the ACCA was illegal.[2] His application relied upon *Johnson*, as well as *Descamps v. United States*, 133 S. Ct. 2276 (2013). *Descamps* held that a sentencing court may not consider extra-statutory materials of the sort approved by the Supreme Court under the "modified categorical approach" developed in *Taylor v. United States*, 495 U.S. 575 (1990), and *Shepard v. United States*, 544 U.S. 13 (2005), when determining whether a conviction under an

---

[2] *Welch* was pending, but had not been decided, when Ziglar filed his *pro se* application; hence, the Eleventh Circuit stayed Ziglar's application pending the decision in *Welch*, which was decided on April 18, 2016.

"indivisible" criminal statute qualifies as an ACCA predicate offense under the enumerated-crimes clause. *See id.* at 2285–86.[3]  Because Ziglar is proceeding a second time under § 2255, he first had to persuade a panel of the Eleventh Circuit that his application makes a "*prima facie* showing," § 2244(b)(3)(C), that it contains "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable," § 2255(h)(2).

In an unpublished order entered on May 3, 2016, which was two weeks after the Supreme Court decided *Welch*, a panel of the Eleventh Circuit found that Ziglar had made "a *prima facie* showing that *Johnson* makes his ACCA sentence unlawful because his state [third-degree burglary] convictions no longer count under any of ACCA's definitions of 'violent felony.'"  *In re Ziglar*, No. 16-10305 (11th Cir. May 3, 2016) ("*Ziglar* Panel Order").  First, the *Ziglar* panel found that, under *Johnson* and *Welch*, Ziglar's Alabama third-degree burglary convictions cannot be counted as violent felonies under the ACCA's now-voided residual clause.  Second, the panel found that, "[w]ithout the 'residual clause,' ACCA doesn't cover Ziglar's Alabama burglary convictions."  (*Ziglar* Panel Order, at 3.)

---

[3] Neither the *Ziglar* Panel Order nor the parties have suggested that Alabama's third-degree burglary statute involves an element of use of force against a person so as to qualify as an ACCA predicate felony under the elements clause.  This opinion likewise does not, and need not, rely on the elements clause.

It is helpful to understand the legal underpinnings of the panel's second finding. The *Ziglar* panel relied upon *United States v. Howard*, 742 F.3d 1334 (11th Cir. 2014), and *Mays v. United States*, 817 F.3d 728 (11th Cir. 2016). On direct appeal, *Howard* applied *Descamps v. United States*, 133 S. Ct. 2276 (2013), to Alabama's third-degree burglary statute. It held that, under *Descamps*, Alabama's third-degree burglary statute is "non-generic and indivisible, which means that a conviction under Alabama Code § 13A-7-7 cannot qualify as generic burglary under the ACCA" and, thus, is not a predicate offense under the ACCA's enumerated-crimes clause. *Howard*, 742 F.3d at 1349 (citing *Descamps*, 133 S. Ct. at 2292). *Mays* subsequently held that *Descamps* did not announce a new rule of constitutional law, 817 F.3d at 734, and that *Descamps* "appl[ied] retroactively in the first post-conviction context." *Id.* at 730. In contrast to the first § 2255 motion at issue in *Mays*, Ziglar's § 2255 motion is his second. Although *Howard* was decided after Ziglar's conviction and sentence became final, the *Ziglar* panel, citing *Mays*, concluded that *Howard* and, thus, necessarily *Descamps*, "applie[s] retroactively on collateral review, *so it appears to govern Ziglar's § 2255 proceedings*." (*Ziglar* Panel Order, at 3 (emphasis added).) After the Eleventh Circuit granted his application to file a second § 2255 motion and appointed counsel, Ziglar filed the instant counseled § 2255 motion on June 21, 2016.

After the entry of the *Ziglar* panel's unpublished order but prior to the filing of Ziglar's second § 2255 motion, the Eleventh Circuit ruled in three published decisions on inmates' applications for authorization to file successive § 2255 motions, that, "while *Descamps* is retroactive for a first § 2255 motion, . . . *Descamps* is not retroactive for purposes of a second or successive § 2255 motion." *In re Hires*, No. 16-12744-J, ___ F.3d ___, 2016 WL 3342668, at *5 (11th Cir. June 15, 2016) (citing *In re Griffin*, 823 F.3d 1350, 1356 (11th Cir. 2016), and *In re Thomas*, 823 F.3d 1345, 1349 (11th Cir. 2016)).  As discussed below, the *Ziglar* panel's finding that *Howard*'s application of *Descamps* applies retroactively to Ziglar's second § 2255 motion has been called into question based upon the subsequent published rulings in *Thomas*, *Griffin*, and *Hires*.  These published decisions compel the conclusion that Ziglar has not satisfied § 2255(h)(2)'s narrow requirements for filing a second or successive § 2255 motion and that the motion must be dismissed for lack of jurisdiction.

## III.  DISCUSSION

The discussion proceeds in four parts.  First, the *de novo* standard of review is discussed.  Second, whether Ziglar has satisfied the jurisdictional requirements of § 2255(h)(2) is reviewed *de novo*.  Third, *Descamps*'s role in Ziglar's second § 2255 motion is analyzed.  Fourth, the issue of a government waiver of the non-retroactive status of *Descamps* in a second § 2255 motion is resolved.

**A.**   **This Court's Duty to Review *De Novo* Whether Ziglar Satisfies § 2255(h)(2)'s Jurisdictional Requirements**

An Eleventh Circuit panel has certified that Ziglar made a *prima facie* showing under § 2244(b)(3) that his second § 2255 motion contains "a new rule of constitutional law [announced in *Johnson*], made retroactive to cases on collateral review by the Supreme Court [in *Welch*], that was previously unavailable" to Ziglar.[4] § 2255(h)(2).  This certification is only a "threshold determination" and "does not conclusively resolve" whether Ziglar's § 2255 motion satisfies the requirements of § 2255(h)(2).  *In re Moore*, No. 16-13993-J, ___ F.3d ___, 2016 WL 4010433, at *2 (11th Cir. July 27, 2016).  The district court "not only can, but must, determine for itself" whether the requirements of § 2255(h)(2) are met.  *Id.* (citing *Jordan v. Sec'y, Dep't of Corr.*, 485 F.3d 1351, 1357 (11th Cir. 2007)); *see also In re Bradford*, No.

---

[4] "When a petitioner seeks leave to pursue a successive § 2255 motion under § 2255(h)(2), [the Eleventh Circuit] ha[s] held that a petitioner must demonstrate a 'reasonable likelihood' that [he] will benefit from a new, retroactive, and previously unavailable constitutional rule in order to make a *prima facie* showing that [his] application satisfies the requirements of §§ 2244(b) and 2255(h)."  *In re Hires*, 2016 WL 3342668, at *2.  In the recent flurry of post-*Johnson*/*Welch* applications, the Eleventh Circuit has extrapolated from this standard that a *prima facie* showing requires the inmate to show "that he falls within the scope of the new substantive rule announced in *Johnson*."  *In re Moore*, 2016 WL 4010433, at *2; *In re Griffin*, 823 F.3d at 1354; *In re Thomas*, 823 F.3d at 1348; *In re Hines*, No. 16-12454-F, ___ F.3d ___, 2016 WL 3189822, at *2 (11th Cir. June 8, 2016) (accord); *see also In re Gordon*, No. 16-13681-J, ___ F.3d ___, 2016 WL 3648472, at *2 (11th Cir. July 8, 2016) (articulating the "prima facie case" as requiring a "showing that [the federal prisoner] was sentenced, at least in part, under the residual clause"); *Moore*, 2016 WL 4010433, at *2 (concluding that the federal inmate made a *prima facie* showing, in part, because it was "not clear whether the district court relied on the residual clause or the other ACCA clauses not implicated by *Johnson*").

16-14512-J, ___ F.3d ___, 2016 WL 4010437, at *3 (11th Cir. July 27, 2016) (explaining that "in the context of applications to file successive § 2255 motions, we have adopted *Jordan*, 485 F.3d at 1358").  This means that the movant must pass through two gates before the merits of a second or successive § 2255 motion can be reviewed.  The first gate is the Eleventh Circuit's *prima facie* decision that the movant satisfies the § 2255(h) criteria, thus, authorizing the filing in the district court of a second or successive § 2255 motion.  *See Jordan*, 485 F.3d at 1357; *Moore*, 2016 WL 4010433, at *2.  The second gate is the district court's decision, based upon *de novo* review, that the movant's "claim truly does meet the [§ 2255(h)(2)] requirements." *Id.* at 1358.  "Only if the district court . . . concludes that the movant 'has established the statutory requirements for filing a second or successive motion' should it 'proceed to consider the merits of the motion, along with any defenses and arguments the respondent may raise.'" *Faust v. United States*, 572 F. App'x 941, 943 (11th Cir. 2014) (quoting *In re Moss*, 703 F.3d 1301, 1303 (11th Cir. 2013)).

The *Ziglar* panel emphasized that its "'limited determination'" that Ziglar had made a *prima facie* showing of the § 2255(h) criteria is not binding on the district court, "which must decide the case 'fresh, or in the legal vernacular, *de novo*.'"[5]

---

[5] The Eleventh Circuit consistently has emphasized the district court's obligation to conduct an independent inquiry of the § 2255(h)(2) requirements.  *See In re Davis*, ___ F.3d ___, No. 16-13779-J, 2016 WL 4070987, at *2 (11th Cir. July 21, 2016) ("As usual, this is a limited determination on our part, and, as we have explained before, the district court is to decide the § 2255(h) issues fresh, or in the legal vernacular, *de novo*." (citation, alterations, and internal quotation marks omitted)); *In re Pinder*, ___ F.3d ___, No. 16-12084-J, 2016 WL 3081954, at *3

(*Ziglar* Panel Order, at 3 (quoting *In re Moss*, 703 F.3d at 1302).)  After *de novo* review, the "district court shall dismiss any claim presented in a second or successive application that the court of appeals has authorized to be filed unless the applicant shows that the claim satisfies the requirements of this section."  28 U.S.C. § 2244(b)(4); *see also In re Moore*, 2016 WL 4010433, at *2 (quoting § 2244(b)(4), "which is cross referenced in § 2255(h)").

This court's duty to review *de novo* whether Ziglar's § 2255 motion satisfies § 2255(h)(2) is clear under Eleventh Circuit case law.  Because (h)(2) is jurisdictional, "*de novo*" review includes revisiting this court's subject-matter jurisdiction.  The court turns to what precisely *de novo* review entails, including how far the court must delve into the merits to enable an informed (h)(2) decision.

In *Griffin*, the Eleventh Circuit explained that to satisfy § 2255(h)'s requirements at the initial circuit level, "it is not enough for a federal prisoner to simply identify *Johnson* and the residual clause as the basis for the claim or claims

---

(11th Cir. June 1, 2016) ("Our order authorizing the filing 'in no way binds' the District Court, which 'must decide even the § 2255(h) question 'fresh, or in the legal vernacular, *de novo*.'"); *Faust*, 572 F. App'x at 943 ("Where we make the limited determination that the movant has made a *prima facie* showing that his application satisfies § 2255(h), the proper procedure is to remand the case to the district court for a *de novo* decision on the § 2255(h) issues."); *In re Moss*, 703 F.3d at 1303 ("Should the district court conclude that Mr. Moss has established the statutory requirements for filing a second or successive motion, it shall proceed to consider the merits of the motion, along with any defenses and arguments the respondent may raise.").  This division of work makes sense:  The circuit court proceeds with no briefing from the government and precious little, if any, from the prisoner; without, usually, the benefit of the record; and under tremendous time pressure (30 days).  *See Jordan*, 485 F.3d at 1358.

he seeks to raise in a second or successive § 2255 motion." 823 F.3d at 1354. The federal prisoner also must make a *prima facie* case "show[ing] that he was sentenced under the residual clause in the ACCA and that he falls within the scope of the new substantive rule announced in *Johnson*." *Id.*; *see also In re Thomas*, 823 F.3d at 1348 (accord); *In re Moore*, 2016 WL 4010433, at *2 (accord). Even before *Johnson*, the Eleventh Circuit explained that, without a requirement that the inmate falls within the scope of the new substantive rule or, in other words, that there is "a reasonable likelihood that [the inmate] would benefit from the [new] rule," any inmate "could bring a second or successive petition based on a new constitutional rule made retroactive on collateral review by the Supreme Court, even if it had no bearing on his case." *In re Henry*, 757 F.3d 1151, 1162 (11th Cir. 2014). At the circuit level, Ziglar only had to make a *prima facie* showing, but here Ziglar must make an actual showing. *See Jordan*, 485 F.3d at 1358; *Moore*, 2016 WL 4010433, at *2.

In *Moore*, the Eleventh Circuit offered the following helpful guidance, even though only in dicta, as to how the district court should perform its *de novo* review: The district court "must decide whether or not [the federal inmate] was sentenced under the residual clause [at the time of sentencing], whether the new rule in *Johnson* is implicated as to [the federal inmate's] [ ] predicate conviction[s], and whether the § 2255(h) 'applicant has established the [§ 2255(h)] statutory requirements for filing

a second or successive motion.'"  *Moore*, 2016 WL 4010433, at *3.  "Only then should the district court "proceed to consider the merits of the motion, along with any defenses and arguments the respondent may raise."  *Id.*  *Moore* explained further that, in the context of a potential *Johnson* claim, "even if a defendant's prior conviction was counted under the residual clause, courts can now consider whether that conviction counted under another clause of the ACCA."  *In re Moore*, 2016 WL 4010433, at *2 (citing *Welch*, 136 S. Ct. at 1268).  In a similar vernacular, *Hires* observed that "what matters . . . is whether, *at sentencing*, [the defendant's] prior convictions qualified pursuant to the residual clause, which would render his sentence subject to successive § 2255 challenge under *Johnson*, or pursuant to the elements clause [or the enumerated-crimes clause], which would not."  *In re Hires*, 2016 WL 3342668, at *5 (brackets added); *see also In re Moore*, 2016 WL 4010433, at *2 (accord).  In other words, if, at the time of sentencing, Ziglar's third-degree burglary convictions qualified as violent felonies under the enumerated-crimes clause (even if they also qualified under the residual clause), Ziglar does not "fall[ ] within the scope of the substantive ruling in *Johnson*," and "that settles the matter for *Johnson*-residual clause purposes regardless of whether those convictions would count were [Ziglar] sentenced today."  *Hires*, 2016 WL 3342668, at *5; *In re Moore*, 2016 WL 4010433, at *2 (accord).  In the district court, all these requirements are pre-merits considerations.

15

Finally, in *Moore*, the Eleventh Circuit placed the burden squarely on the § 2255(h)(2) movant.  It explained that, "in the district court . . . , a movant has the burden of showing that he is entitled to relief in a § 2255 motion—not just a *prima facie* showing that he meets the requirements of § 2255(h)(2), but a showing of actual entitlement to relief on his *Johnson* claim."   2016 WL 4010433, at *3 (collecting cases); *see also Jordan*, 485 F.3d at 1358.  Thus, Ziglar bears the burden of establishing the § 2255(h)(2) prerequisites.  *See Faust*, 572 F. App'x at 943 ("Only if the district court . . . concludes that the movant 'has established the statutory requirements for filing a second or successive motion' should it 'proceed to consider the merits of the motion . . . .'" (quoting *In re Moss*, 703 F.3d at 1303)).

The *Moore* and *Hires* opinions set forth a convincing option.  *See In re Chance*, Nos. 16-13918-J, 16-14643-J, ___ F.3d ___, 2016 WL 4123844, at *1 (11th Cir. Aug. 2, 2016) (criticizing *Moore* as "wrong" but only dicta, and observing, in dicta, that "[t]he *Moore* opinion lays out one option.  This one lays out another. . . . Or perhaps there is another approach out there that neither we nor the *Moore* panel has considered").  If the court has misinterpreted *Moore* and *Hires* and crossed the gatekeeping line into a merits analysis,[6] then the court's analysis should be

---

[6] It is difficult to discern where the § 2255(h)(2) gatekeeping function ends and the merits analysis begins when deciding whether Ziglar "was sentenced under the residual clause in the ACCA and . . . falls within the scope of the new substantive rule announced in *Johnson*."   823 F.3d at 1354.

interpreted as attempting a third option, namely, that while *Johnson* is a new rule of constitutional law that the Supreme Court has made retroactive on collateral review, § 2255(h)(2), the § 2255 motion fails on the merits.  That is because, at the time of sentencing in 2006, Ziglar's third-degree burglary convictions qualified as violent felonies under the ACCA's enumerated-crimes clause, which is unaffected by *Johnson*.  Therefore, Ziglar cannot rely on *Descamps*, which he must do, to disqualify his convictions under the enumerated-crimes clause because *Descamps* does not satisfy § 2255(h)(2)'s requirements.

**B.**   **Whether Under *De Novo* Review Ziglar's *Johnson* Claim Satisfies § 2255(h)(2)**

To begin, there is no quarrel that the ACCA's residual clause is unconstitutional under *Johnson* and that the Supreme Court declared *Johnson* retroactive in *Welch*.  Additionally, Ziglar's conviction and sentence became final prior to the rule announced in *Johnson*.  Under § 2255(h)(2), *Johnson* established "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable" to Ziglar.  Accordingly, it is clear that Ziglar's Alabama third-degree burglary convictions do not count as violent felonies under the ACCA's residual clause for purposes of a second § 2255 motion.  But that does not end the § 2255(h)(2) inquiry.  Ziglar's ACCA-enhanced sentence also must "fall[ ] within the scope" of *Johnson*'s new rule of constitutional law.  *In*

*re Griffin*, 823 F.3d at 1354; *In re Thomas*, 823 F.3d at 1348; *In re Moore*, 2016 WL 4010433, at *2. Ziglar's § 2255 motion fails at this inquiry. Because at the time of sentencing Ziglar's Alabama third-degree burglary convictions qualified as violent felonies under the enumerated-crimes clause based on the undisputed facts in the PSR, the convictions do not fall within the scope of the new substantive rule in *Johnson*.

Here, as in *Moore*, the sentencing court did not state expressly whether it "relied on the residual clause or the other ACCA clauses not implicated by *Johnson*." *In re Moore*, 2016 WL 4010433, at *2. With no objections lodged to the PSR, which had classified Ziglar as an armed career criminal under the ACCA, the district court adopted the presentence report without discussion of the ACCA or which convictions qualified or under what clause. *Moore* explained that where the sentencing record is not clear as to which felony convictions the sentencing court used and why, it is up to the district court to assess "*[w]hether at the time of . . . sentencing*[,]*"* the defendant's felony convictions qualified as violent felonies under one of the ACCA's clauses that is unaffected by *Johnson*. *Id.* (emphasis added).

At the time of Ziglar's sentencing in 2006, the relevant time period according to *Moore* and *Hires*, there was Eleventh Circuit authority that would have supported the sentencing court's use of the modified categorical approach to assess whether Ziglar's Alabama convictions for third-degree burglary were violent felonies under

the ACCA's enumerated-crimes clause.[7] *See Dowd v. United States*, 451 F.3d 1244, 1255 & n.12 (11th Cir. 2006) (relying on an indictment and plea agreement to ascertain that a prior conviction identified only as "burglary" was a generic burglary of a building or structure, and, thus, a qualifying offense under the ACCA's enumerated-crimes clause); *see also Ziglar v. Rathman*, No. 1:14-cv-0542-CLS-JEO, 28 (N.D. Ala. May 27, 2016) (describing *Dowd* as "us[ing] the modified categorical approach to determine that [a] prior burglary conviction[ ] under a non-generic statute w[as] for a generic offense"). There also was Eleventh Circuit precedent that, when determining the eligibility of a defendant's prior convictions under the ACCA, courts could consider undisputed facts contained in the PSR when applying the modified categorical approach. *See United States v. Bennett*, 472 F.3d 825, 832, 33–34 (11th Cir. 2006) (For purposes of classifying the defendant as an

---

[7] Two methods guide the determination of whether a prior conviction is for generic burglary under the ACCA: the categorical approach and the modified categorical approach. The categorical approach "compare[s] the elements of the statute forming the basis of the defendant's conviction with the elements of the generic crime." *Descamps*, 133 S. Ct. at 2281. "The prior conviction qualifies as an ACCA predicate only if the statute's elements are the same as, or narrower than, those of the generic offense." *Id.* Under the modified categorical approach, courts can "examine a limited class of documents to determine which of a statute's alternative elements formed the basis of the defendant's prior conviction." *Id.* at 2284.

In 2006, *Dowd* countenanced the use of the modified categorical approach for non-generic convictions. In 2010, after Ziglar's sentencing, the Eleventh Circuit expressly held that a conviction under Alabama's third-degree burglary statute, Ala. Code § 13A-7-7, although a non-generic burglary statute, qualified as a "crime of violence" under the enumerated-clause of the ACCA if, under the modified categorical approach, the defendant "was actually found guilty of the elements of a generic burglary." *United States v. Rainer*, 616 F.3d 1212, 1213 (11th Cir. 2010). However, the "settled law" of *Rainer* was later "unsettled" by *Descamps*. *See Howard*, 742 F.3d at 1338.

armed career criminal, "the PSI, together with the addendum to the PSI, indicated that court documents of [the defendant's] prior burglaries showed that his burglaries were of either residential or commercial buildings" and, thus, qualified as violent felonies as a generic "burglary.").

Based upon *Dowd* and *Bennett*, the sentencing court would have been comfortably within circuit law to have applied the modified categorical approach, relying on the PSR's undisputed facts, to conclude that Ziglar's Alabama convictions for third-degree burglary under Alabama's non-generic statute qualified as generic burglary under the ACCA's enumerated-crimes clause.   A state burglary offense satisfies the definition of "burglary" under the ACCA's enumerated-crimes clause if it has "the basic elements of unlawful or unprivileged entry into, or remaining in, a *building or structure*, with intent to commit a crime."   *Taylor v. United States*, 495 U.S. 575, 599, 602 (1990) (emphasis added).   The facts in the PSR, to which Ziglar acceded, show that Ziglar had accumulated four Alabama third-degree burglary convictions for breaking into three churches and a residence.   These facts establish that Ziglar had at least three predicate felony convictions for burglarizing a "building or structure" and, thus, Ziglar's crimes satisfy the basic elements of generic burglary. His convictions for third-degree burglary counted under the enumerated-crimes clause of the ACCA, regardless of whether they also counted under the residual

clause.[8]  Accordingly, Ziglar has not shown that his ACCA sentence is invalid solely under the residual clause based on *Johnson* because at the time of sentencing Ziglar's convictions under Alabama's third-degree burglary statute qualified as violent felonies under the still-valid enumerated-crimes clause of the ACCA.

In sum, the sentencing court did not expressly state which convictions or under which clause of the ACCA the convictions qualified as violent felonies.  Ziglar still cannot show, though, that "he falls within the scope of the new substantive rule announced in *Johnson*."  *In re Griffin*, 823 F.3d at 1354.  This is because at the time of sentencing in 2006, "even if [Ziglar's] prior conviction[s] w[ere] counted under the residual clause," they also counted under the ACCA's enumerated-crimes clause. *In re Moore*, 2016 WL 4010433, at *2 (citing *Welch*, 136 S. Ct. at 1268).  His successive § 2255 motion, thus, does not meet the requirements of § 2255(h)(2).

## C.  Whether *Descamps* Is Applicable in the Post-*Johnson*/*Welch* World

The foregoing analysis is not complete without a discussion of *Descamps*'s role in these proceedings, notwithstanding the parties' silence on the issue.  The parties' briefing implicitly assumes, as it must in order for Ziglar to get through the § 2255(h)(2) gateway, that the *Descamps* holding applies to inform the analysis of

---

[8] The Eleventh Circuit in *Mays* indicated that, based on a 2006 decision, it previously had decided that burglary convictions "similar to" § 13A-7-7 of the Code of Alabama "qualified as violent felonies under the residual clause."  *Mays*, 817 F.3d at 734 n.7 (citing *United States v. Matthews*, 466 F.3d 1271, 1275–76 (11th Cir. 2006)).

whether Ziglar's third-degree burglary convictions counted in 2006 as violent felonies under the ACCA's enumerated-crimes clause.  The court agrees only with this:  If *Descamps* were available to Ziglar today to challenge his 2006 sentence on a second § 2255 motion, then under the Eleventh Circuit's holding in *Howard* (which applied *Descamps*) that Alabama's third-degree burglary statute is non-generic and indivisible, Ziglar's convictions cannot qualify as violent felonies under the ACCA's enumerated-crime clause.  *See Howard*, 742 F.3d at 1349 (citing *Descamps*, 133 S. Ct. at 2293).  Similarly, if sentenced today, Ziglar would not be ACCA eligible based upon the combined holdings of *Johnson* and *Descamps* because he would not have three qualifying violent felonies under any clause of the ACCA.  For purposes of his second § 2255 motion, however, *Descamps* is not retroactive.  Neither Ziglar nor the government has made a cogent argument as to how or why *Descamps* belatedly can enter into the analysis.  *Descamps* simply does not ring the § 2255(h)(2) bell.

First, Ziglar would be unable today to bring a second or successive § 2255 motion on the basis of *Descamps*.  The motion would be subject to dismissal for lack of subject-matter jurisdiction.  The Eleventh Circuit has explained that "to open the successive § 2255 door, the rule must be both new and a rule of constitutional law," but "*Descamps* is a rule of statutory interpretation, not constitutional law."  *In re Griffin*, 823 F.3d at 1356.  Even if it were a rule of constitutional law, *Descamps* has not been made retroactive by the Supreme Court.  *See In re Joshua*, 224 F.3d 1281,

1282 (11th Cir. 2000) ("For a new rule to be retroactive [under § 2255(h)(2)], the Supreme Court must make it retroactive to cases on collateral review."). Also, although the Eleventh Circuit held in *Mays v. United States*, 817 F.3d 728 (11th Cir. 2016) (per curiam), that *Descamps* applies retroactively "in the first post-conviction context," *id.* at 730, this is Ziglar's second § 2255 motion, and *Mays*, in any event, is not a holding of the Supreme Court. The *Ziglar* Panel Order's reliance on *Mays* for retroactive application of the *Descamps* holding in the context of a second or successive § 2255 motion was only a "limited determination" that upon further analysis does not find support in the text of § 2255(h)(2).[9] Moreover, *Mays*'s holding was limited expressly to an initial § 2255 motion, and after *Mays*, the Eleventh Circuit confirmed that "*Descamps* is not retroactive for purposes of a second or successive § 2255 motion." *In re Hires*, 2016 WL 3342668, at *2 (citing *In re Griffin*, 823 F.3d at 1356; *In re Thomas*, 823 F.3d at 1348); *see also In re Clayton*, 2016 WL 3878156, at *8 n.14 (noting that *Thomas* was the Eleventh Circuit's "first published opinion on this issue [of whether *Descamps* applies to a *Johnson* claim]").

Finally, *Thomas*, *Griffin*, and *Hires*'s uniform pronouncement about *Descamps*'s non-retroactivity in a second or successive § 2255 motion is consistent

---

[9] The *Ziglar* Panel Order said that "*Howard* applies retroactively on collateral review," and *Howard* applied *Descamps* in the context of a direct appeal.

with this circuit's unpublished, but persuasive, authority entered prior to *Johnson* and *Welch*. *See King v. United States*, 610 F. App'x 825, 829 (11th Cir.) (*Descamps* does not "apply retroactively on collateral review as required by § 2255(h)(2) . . . ."), *cert. denied*, 136 S. Ct. 349 (2015)[10]; *see also Wilson v. Warden, FCC–Coleman*, 581 F. App'x 750, 753 (11th Cir. 2014) ("The Supreme Court itself has not expressly declared *Descamps* to be retroactive to cases on collateral review. Moreover, *Descamps* was decided in the context of a direct appeal, and the Supreme Court has not since applied it to a case on collateral review."). Based on these principles, *Descamps* does not apply retroactively on collateral review as required by § 2255(h)(2), and Ziglar is unable to lay a second § 2255 motion on the foundation of *Descamps*.

Second, *Descamps* is a round-peg case for purposes of *Johnson*'s square holding. *Descamps* pertains to when a sentencing court can use the modified categorical approach to classify a prior conviction under the ACCA's enumerated-

---

[10] *King* further undermines the opening of the § 2255(h)(2) door by *Johnson* to let in *Descamps*. It would be odd on the one hand to foreclose *Descamps* claims under § 2255(h)(2) prior to *Johnson*, but after *Johnson*, to permit *Descamps* claims under § 2255(h)(2) when in the interim the Supreme Court has not made *Descamps* retroactive on collateral review. Ziglar could have argued that, at the time of his sentencing in 2006, a challenge to the classification of his third-degree burglary convictions under the enumerated-crimes clause based upon a *Descamps*-styled argument would have been inconsequential without precognition of the residual clause's unconstitutionality. But this argument, were Ziglar to make it, is constrained by the narrow opening of § 2255(h)(2), through which *Descamps* simply will not fit. *See Mays*, 817 F.3d at 736 ("[T]he retroactivity analysis demanded by 28 U.S.C. § 2255(h) is narrow—it is limited to whether the Supreme Court has explicitly, or by logical necessity, made a rule retroactive.").

crimes clause.  *See Mays*, 817 F.3d at 731 ("The Court in *Descamps* addressed our approach to determining whether a crime constitutes a violent felony under the enumerated clause.").  *Descamps*'s holding is unrelated to *Johnson*'s holding and to the residual clause.  *Johnson*'s holding solely invalidates the residual clause and has no effect on the other ACCA's clauses defining violent felony.  *See Johnson*, 135 S. Ct. at 2563 ("Today's decision does not call into question . . . the remainder of the [ACCA] definition of violent felony.").  Because *Descamps* is not retroactive under § 2255(h)(2) and does not address the residual clause, *Hires* is persuasive for its point that "*Johnson* involved the residual clause and does not serve as a portal to relitigate whether a prior . . . conviction . . . qualifies under the elements clause" or, here, the enumerated-crimes clause.  *Hires*, 2016 WL 3342668, at *5.

In *Hires*, the panel opined that "what matters" is whether at sentencing Hires's prior convictions qualified as violent felonies under a clause unaffected by *Johnson*. *Id*.  *Hires* is instructive.  In *Hires*, the third pivotal predicate conviction was for robbery under Florida law.  The Eleventh Circuit concluded that the sentencing court could rely on the PSR's undisputed facts, as well as on *Shepard*-approved documents, as the basis for finding that Hires's Florida robbery conviction was a violent felony under the ACCA's elements clause.  *See Hires*, 2016 WL 3342668, at *4 (citing, among others, *Bennett*, 472 F.3d at 832–34, and *Dowd*, 451 F.3d at 1255). The Eleventh Circuit rejected Hires's argument that *Descamps* had undermined the

circuit's precedent and foreclosed the use of the modified categorical approach as to Florida's robbery statute, which *Hires* argued was indivisible. *See id.* at *5. "[B]ecause Hires's convictions qualified under the elements clause" at the time of sentencing, "that settles the matters for *Johnson*-residual clause purposes regardless of whether those convictions would count were Hires being sentenced today." *Id. Johnson* could not be used "as a portal to raise *Descamps*-based claims about [the circuit's] ACCA elements-clause precedents through a successive § 2255 motion." *Id.*

Here similarly, based on the law in 2006 and the PSR's undisputed facts, Ziglar's third-degree burglary convictions counted as violent felonies under the ACCA's enumerated-crimes clause at the time of sentencing. Ziglar cannot use *Johnson* as a portal to apply *Descamps* retroactively to his ACCA predicate convictions for third-degree burglary. In sum, Ziglar cannot rely on *Descamps* to meet § 2255(h)(2)'s requirements or to prevent his third-degree burglary convictions from counting as violent felonies under the ACCA's enumerated-crimes clause. While undoubtedly a harsh result for Mr. Ziglar, the law compels this outcome.

As noted above, there was the complete absence of adversarial briefing ("abdication" is probably a better description of the government's national policy)

on the pivotal *Descamps* issue.[11]  The government relied on *Howard* to join Ziglar's

argument that "Alabama third degree burglary does not constitute generic burglary,

as required to establish it is an enumerated offense" under the ACCA.  (Doc. # 5, at

13 (citing *Howard*, 742 F.3d 1334).)  The government's consent brief, filed on July

18, 2016, suspiciously omits any discussion, however, of the Eleventh Circuit's

rulings in *Thomas*, *Griffin*, and *Hires*.  It has not addressed, as it should have,

whether at the time of sentencing Ziglar's third-degree burglary convictions under

Alabama law would have counted as violent felonies under the ACCA's

enumerated-crimes clause for purposes of a second or successive § 2255 case.

 *Thomas*, *Griffin*, and *Hires* should, it seems, settle the matter about

*Descamps*'s applicability:   Because this is Ziglar's second  § 2255 motion,

*Descamps*, which is not a new rule of constitutional law, cannot be applied to

determine whether a prior conviction supported an enhanced ACCA sentence under

---

[11] The government's position is informed by a national Department of Justice policy.  *See Brascomb v. United States*, No. 1:14-CV-1188-WKW, 2015 WL 7300512, at *3 n.4 (M.D. Ala. Nov. 18, 2015) (citing *Parker v. Walton*, No. 13-CV-1110, 2014 WL 1242401, at *2 (S.D. Ill. Mar. 26, 2014) (noting that the government, when ordered to address the retroactivity of *Descamps*, stated that the Department of Justice "has issued a nation-wide directive instructing federal prosecutors to refrain from asserting that *Descamps* is not retroactive on collateral review")).  While the court appreciates the prerogative of the Executive Branch, the unwise exercise of its prerogative undermines the rule of law.  Our adversarial system, in order to be properly balanced, requires adversaries propounding adversarial positions, *i.e.*, dogs with bite, not lap dogs.  Trial judges all over the land of the free tell juries that they must follow the law, whether they agree with it or not.  Violation of this basic tenet makes for policy-based outcomes that undermine not only the goal of non-disparate treatment of offenders, but ultimately the rule of law.  History teaches that such outcome-based advocacy can cut deeply both ways, filling jails just as easily as emptying them.  This criticism is not of the local prosecution but of the national policy imposed upon local prosecution offices.

the enumerated-crimes clause at the time of sentencing. But exactly what *Descamps*'s role is in a second or successive § 2255 case filed after *Johnson* and *Welch* has produced published panel opinions that are conflicting or, at the very least, confusing. With only a concession from the government as to the granting of Ziglar's second § 2255 motion, this court has had to travel alone in a boundless sea of conflicting currents about *Descamps*'s applicability in the *post-Johnson*/*Welch* waters. *See In re Leonard*, No. 16-13528-J, 2016 WL 3885037, at *9 n.7 (11th Cir. July 13, 2016) ("[T]his court has been erratic about whether and when *Descamps* applies in th[e] context [of second or successive § 2255 motions that rely upon *Johnson* and *Welch*].").

Recently, there have been at least seven published panel opinions that have addressed *Descamps*'s relevance in the post-*Johnson*/*Welch* § 2255(h)(2) analysis. Three—*Thomas*, *Griffin*, and *Hires*—are mentioned above. The other four decisions are: (1) *In re Adams*, No. 16-12519, ___ F.3d ___, 2016 WL 3269704 (11th Cir. June 15, 2016); (2) *In re Rogers*, No. 16-12626, ___ F. 3d ___, 2016 WL 3362057, at *1–3 (11th Cir. June 17, 2016); (3) *In re Parker*, No. 16-13814-J, ___ F.3d ___2016 WL 3648380, at *1 (11th Cir. July 7, 2016), *vacated*, *In re Parker*, No. 16-13814-J (11th Cir. Aug. 10, 2016) (vacating on grounds of recusal and dismissing the request "since it raises the same claim as his first request") ; and (4) *In re Chance*,

28

Nos. 16-13918-J, 16-14643-J, ___ F.3d ___, 2016 WL 4123844, at *1 (11th Cir. Aug. 2, 2016).[12]

To summarize, under the rationale of *Adams*, *Rogers*, *Parker*, and *Chance*, "[w]hen the record does not make clear that the sentencing court relied *solely* on the ACCA's still-valid provisions to classify each predicate offense and binding precedent does not otherwise demonstrate that only valid ACCA clauses are implicated," the court must apply *Descamps* to "determin[e] whether a prior conviction would still support an ACCA enhanced sentence." *In re Rogers*, 2016 WL 3362057, at *2. This statement was made in the context of evaluating the inmate's *prima facie* showing, and the Eleventh Circuit said that, "[a]lthough *Descamps* bears on th[e] case, it is not an independent claim that is itself subject to the gatekeeping requirements" of § 2255(h)(2)," and the court "look[s] to guiding precedent, such as *Descamps*, to ensure [that it] appl[ies] the correct meaning of the ACCA's words." *Adams*, 2016 WL 3269704, at *3; *see also In re Chance*, 2016 WL 4123844, at *4 (assuming that "*Johnson* does apply to § 924(c)'s 'very similar' residual clause," then the district court must apply the categorical approach, and "it would make no sense for a district court to have to ignore precedent such as *Descamps* . . . .").

---

[12] All seven decisions have arisen in the context of the Eleventh Circuit's panel rulings on applications to file successive § 2255 motions.

The foregoing four cases appear hopelessly irreconcilable with *Thomas*, *Griffin*, and *Hires*. The only solace is found in the panel opinions' own suggestions that the conflicting views are dicta. *Chance* explained that, "when an inmate asks a court of appeals to certify a second or successive § 2255 motion, § 2255(h) is our sole source of authority to do or say anything in the case. That means any discussion of topics beyond 'the § 2255(h) issues' is irrelevant to a case and therefore dicta." *In re Chance*, 2016 WL 4123844, at *3. In particular, as to *Descamps*, the *Chance* panel said that *Hires*'s suggestion "that judges can ignore *Descamps* when ruling on *Johnson* motions" is dicta. *In re Chance*, 2016 WL 4123844, at *5 n.5. *Moore* also—although it did not speak of *Descamps*—largely is dicta, as expressed by the *Chance* panel. *See id.* at *3 ("The *Moore* panel phrased its commentary in terms of what courts 'must' and 'cannot' do, but that commentary undoubtedly is dicta."). The *Chance* panel then relegated most of even what *it* said to mere dicta. *In re Chance*, 2016 WL 4123844, at *4 ("Of course, we recognize that what we are about to say has no more legal force than the *Moore* panel's commentary (that is: none)."). *Moore*, for the most part, is self-confessed dicta. *Moore* admonishes that "[s]hould an appeal be filed from the district court's determination [about the § 2255(h) requirements or the merits], nothing in this order shall bind the merits panel in that appeal." *In re Moore*, 2016 WL 4010433, at *3. *Rogers* emphasizes also that "nothing we pronounce in orders on applications to file successive § 2255 motions

binds the district court."[13]   *In re Rogers*, 2016 WL 3362057, at \*3.  Thus, according to the circuit itself, most of what it said in these opinions is dicta or, at the very least, consists of pronouncements that are only applicable to the circuit's *prima facie* showing analysis and not to the district court's *de novo* review.

This court takes the Eleventh Circuit at its word to treat its conflicting pronouncements on how to apply *Descamps* after *Johnson* and *Welch*—to the extent those pronouncements are directed to the district court's *de novo* examination of § 2255(h)(2)—as the circuit's reflections and suggestions.  This opinion takes the path of *Griffin*, *Thomas*, *Hires*, and *Moore* as being the road more travelled in the law.

---

[13] *Rogers* did have this to say, however, about *Hires*, upon which this court has relied: "*Hires*'s statement[—that "*Descamps* cannot serve as a basis, independent or otherwise, for authorizing a successive § 2255 motion"]—is in tension with our holding in *Adams*, but because *Adams* was decided before *Hires*, its holding established prior panel precedent that Hires could not overrule." *In re Rogers*, 2016 WL 3362057, at \*2 n.6. *Adams* and *Hires* were decided on the same day, but *Adams* was released prior to *Hires*. *Rogers*'s statement that *Adams* controls also seems to be in tension with *In re Clayton*, 2016 WL 3878156, which announced that an earlier-decided case, *Thomas*—which appears to conflict with *Adams*—was the Eleventh Circuit's "first published opinion on this issue [of whether *Descamps* applies to a *Johnson* claim]." *In re Clayton*, 2016 WL 3878156, at \*8 n.14 (citing *In re Thomas*, 2016 WL 3000325). This is why perhaps *Adams* distinguished its facts from *Thomas*, and to the extent that *Adams*'s distinction is more than dicta, the court finds that Ziglar's facts fit more neatly into *Thomas*'s paradigm than *Adams*'s. *See id.* (describing *Thomas* as holding "that *Descamps* did not apply to a *Johnson* claim because the sentencing judge had cited the *Taylor* case when imposing sentence"). Similarly, here, the sentencing court adopted the factual statements in the PSR to which Ziglar did not object. Those factual statements show that Ziglar's four third-degree burglary convictions were based on his burglary of "building[s] or structure[s]," and, thus, at the time of sentencing, the convictions qualified as generic burglary under the enumerated-crimes clause. In other words, because the sentencing judge adopted the PSR's factual findings, which established that the third-degree burglary convictions were violent felonies under the enumerated-crimes clause, *Descamps* does not apply.

**D.**    **The Government's Waiver as to *Descamps*'s Non-Retroactivity**

That leaves, finally but importantly, the waiver by the government of *Descamps*'s non-retroactivity. The government, in its concession brief, implicitly waived any argument that *Descamps* is not retroactively applicable to cases proceeding on a second § 2255 motion. But this the government cannot do, either impliedly or expressly.

For second or successive § 2255 motions, the § 2255 movant must clear § 2255(h)'s statutory hurdle, which from all indications is jurisdictional. *See In re Morgan*, 717 F.3d 1186, 1193 (11th Cir. 2013) (Pryor, J., respecting the denial of rehearing en banc) ("The bar on second or successive motions is jurisdictional, so we must determine whether an application to file a second or successive motion is based on a claim involving 'a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable,' 28 U.S.C. § 2255(h)(2). The United States could not concede this legal issue, even if it had taken that position before this Court." (emphasis added; internal case citation omitted)). As abundantly established, the Eleventh Circuit's § 2255(h)(2) *prima-facie* finding is subject to *de novo* review in the district court, to be repeated on appeal in the circuit court. Section 2255(h)(2) is the only portal through which the court of appeals can authorize the filing of a successive § 2255 motion, and it is the only portal through which the inmate can reach the district court to proceed on the

merits of the claim.  *See generally Pratt v. United States*, 129 F.3d 54, 57 (1st Cir. 1997) ("AEDPA's prior approval provision allocates subject-matter jurisdiction to the court of appeals by stripping the district court of jurisdiction over a second or successive habeas petition unless and until the court of appeals has decreed that it may go forward.").  Nothing in *Johnson* or *Welch* saves *Descamps* or even refers to *Descamps*.  Plain and simple, "*Descamps* is not retroactive for purposes of a second or successive § 2255 motion."  *In re Hires*, 2016 WL 3342668, at *2 (citing *In re Griffin*, 823 F.3d at 1356; *In re Thomas*, 823 F.3d at 1349); *see also King*, 610 F. App'x at 829.  *Descamps* missed the *Teague* train of retroactivity for purposes of the (h)(2) portal in *Johnson* claims.[14]

Moreover, it is not even enough for purposes of § 2255(h)(2) that the new rule of constitutional law "satisfies the criteria for retroactive application set forth by the Supreme Court in *Teague v. Lane*, 489 U.S. 288 . . . (1989)."  *In re Joshua*, 224 F.3d at 1283; *see also Mays*, 817 F.3d at 734 n.6 (noting, in the context of an initial § 2255 motion, that the Eleventh Circuit has "discretion to perform [a *Teague*] analysis even where the Government completely fails to raise a *Teague* argument").  Rather, as the statute spells out and binding case law makes clear, "[f]or a new rule to be retroactive [under § 2255(h)(2)], the Supreme Court must make it retroactive to cases on collateral review."  *In re Joshua*, 224 F.3d at 1282.  If the Supreme Court has not

---

[14] *Teague v. Lane*, 489 U.S. 288 (1989).

made a new rule of constitutional law retroactive, as required under § 2255(h)(2), and it has not done so for *Descamps*, this court cannot allow the government to make that decision for the Supreme Court through a waiver. The government cannot confer subject-matter jurisdiction on an Article III court directly, much less indirectly by waiver. *See In re Texas Consumer Fin. Corp.*, 480 F.2d 1261, 1266 (5th Cir. 1973) ("Jurisdiction of subject matter . . . cannot be conferred by consent, agreement, or other conduct of the parties."). Accordingly, the court finds that § 2255(h)(2)'s requirement of retroactivity for second petitions cannot be waived by the government.[15]

## IV. CONCLUSION

Ziglar has not met the requirements to file a second or successive § 2255 motion. The Supreme Court's decision in *Johnson*, voiding the ACCA's residual clause, is a new rule of constitutional law that the Supreme Court in *Welch* declared retroactive and that previously was unavailable to Ziglar. However, Ziglar, as the § 2255 movant on a second petition, has failed to show that, at the time of sentencing, his convictions for third-degree burglary under Alabama law did not count as violent felonies under § 924(e)(2)(B)'s enumerated-crimes clause, and he cannot use

---

[15] In prior litigation, this court found that it was bound by the government's waiver of the affirmative defense of non-retroactivity, in particular, as to *Descamps*, *in a first § 2255 petition*. *See Brascomb v. United States*, No. 1:14-CV-1188-WKW, 2015 WL 7300512, at *2 (M.D. Ala. Nov. 18, 2015). However, the waiver of an affirmative defense by the government in a first-filed habeas corpus petition is quite different from the § 2255(h)(2) jurisdictional question at issue in a second or successive § 2255 case.

*Johnson* as the portal to rely upon *Descamps*, which the Supreme Court has not declared retroactive, to invalidate his ACCA-enhanced sentence.  Ziglar has not shown that his ACCA enhancement turns solely on the validity of the residual clause and that his sentence is within the scope of the new rule of constitutional law announced in *Johnson*.  Accordingly, Ziglar has not satisfied the requirements of § 2255(h)(2), and it is ORDERED that his § 2255 motion is DENIED.

A final judgment will be entered separately.

DONE this 11th day of August, 2016.

_____/s/ W. Keith Watkins_____
CHIEF UNITED STATES DISTRICT JUDGE